# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

HASSAN ROBERTS,

    Petitioner,

vs.

ISIDRO BACA, et al.,

    Respondents.

Case No. 3:14-cv-00053-RCJ-VPC

**ORDER**

    Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#2), respondents' answer (#7), and petitioner's reply (#13).  The court finds that petition is not entitled to relief, and the court denies the petition.

    On June 18, 2008, petitioner was a passenger on a Greyhound bus, which was heading eastward on Interstate 80.  The bus stopped at the Greyhound station in Reno for refueling and cleaning.  The passengers, including petitioner, were required to leave the bus while it was being refueled and cleaned.

    Reno police officers were at the station to interdict drugs.  Officers and a drug sniffing dog entered the bus.  Officer Joseph Lever immediately smelled marijuana.  Ex. 32, at 76 (#9).  The dog went to the back of the bus and alerted officers to a backpack sitting on the floor.  Id. at 78 (#9).  Lever picked up the backpack.  An attached luggage tag had the name "Marvin Davis" on it.  Id. at 81 (#9).  Lever went into the bus station, asking out loud for the person who owned the backpack.  Nobody responded.  Then Lever went outside the bus station, where people would smoke, and did the same.  Nobody responded.  Lever then went to the boarding doors and waited with the

1  backpack. Id. at 82 (#9). A few minutes later petitioner approached Lever and said that the
2  backpack was his.[1] Id. at 84 (#9).
3       Lever asked if he could search the backpack. Petitioner agreed. Ex. 32, at 85 (#9). Lever
4  found inside the backpack a bottle of baby powder and a bottle of foot powder. Lever opened each
5  bottle. Plastic bags containing marijuana and MDMA (ecstasy) pills were inside the bottles. Id. at
6  87-89 (#9). Lever detained petitioner.
7       Lever also found inside the backpack a Greyhound bus ticket with the name "Marvin Davis,"
8  paperwork with petitioner's actual name, and photographs of petitioner. Ex. 32, at 94-96 (#9).
9  Petitioner noted that he had two suitcases in the luggage compartment of the bus. He pointed them
10  out, and Officer Andy Carter retrieved them. Attached to both suitcases were luggage tags with the
11  name "Marvin Davis." Id. at 54 (#9). Lever did not learn from petitioner that his actual name is
12  Hassan Roberts after Lever had detained petitioner, but while they were still at the bus station. Id. at
13  97 (#9).
14       Lever left at the bus station the backpack, the suitcases, and those contents not taken into
15  evidence. He said that he and Carter had an informal practice of police officers was to leave luggage
16  that was not necessary as evidence at the bus station. If the arrested person was released from jail on
17  bail, then he could simply collect the luggage at the bus station and continue with his journey,
18  without going through the lengthy process of having the luggage released from the evidence locker.
19  Ex. 32, at 109 (#9).
20       At the police station, the powder bottles were photographed. Lever's partner then discarded
21  the bottles. The detectives decided that the case against petitioner was clear, the bottles were
22  unlikely to have any fingerprint evidence because their exteriors were covered in powder, and they
23  were a mess. Ex. 32, at 118-20 (#9).

---

[1] Petitioner now argues that he did not claim that the backpack was his, but at trial he neither questioned the officers' recollection that he claimed the bag nor put forth evidence of his own to contradict the officers. He also never has denied that he consented to the search of the backpack. His defense at trial was that "Marvin Davis" was a real person whom the police did not find because of their flawed investigation.

Petitioner filed a pre-trial motion regarding the loss of the backpack and the powder bottles. Ex. 15 (#8). At first it was a motion to suppress, then it became a motion to dismiss, and in the end it became a motion to instruct the jury that the evidence that the police failed to preserve was presumed to be favorable to the defense. The trial court denied the motion, ruling that petitioner had not shown that the police had acted in bad faith or with gross negligence. Ex. 28 (#8).

Petitioner went to trial. The jury found petitioner guilty of the following counts:

I.   Trafficking in a controlled substance;

II.  Possession of a controlled substance for the purpose of sale;

III. Possession of a controlled substance for the purpose of sale;

IV.  Possession of a controlled substance; and

V.   Possession of a controlled substance.

Ex. 36 (#9). The trial court convicted and sentenced petitioner accordingly. Ex. 41 (#9).

Petitioner appealed. The state acknowledged that the convictions for counts II and IV merged into the conviction for count I, and that the convictions for count V merged into the conviction for count III. The Nevada Supreme Court rejected all of petitioner's arguments. The Nevada Supreme Court agreed with the state on merger of counts, and it remanded for entry of a corrected judgment of conviction. Ex. 58 (#10). Ultimately, petitioner was convicted of the following counts:

I.   Trafficking in a controlled substance; and

III. Possession of a controlled substance for the purpose of sale.

Ex. 60 (#10).

Petitioner then filed a post-conviction habeas corpus petition in the state district court. Ex. 61 (#10). The state district court appointed counsel, who filed a supplement. Ex. 63 (#10). The state district court held an evidentiary hearing. Ex. 64 (#10). The state district court denied the petition. Ex. 65 (#10). Petitioner appealed. The Nevada Supreme Court affirmed. Ex. 72 (#10). The Nevada Supreme Court then denied petitioner's requests for rehearing and en banc reconsideration. Ex. 75 (#10), Ex. 83 (#10).

Petitioner then commenced this action.

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 562 U.S. at 100. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 562 U.S. at 102.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 103.

Ground 1 is a claim of ineffective assistance of counsel. A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . . The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (citations omitted).

Petitioner argues that counsel provided ineffective assistance because he did not file a motion to suppress the evidence obtained from the backpack.[2] On this issue, the Nevada Supreme Court held:

> Roberts submits that an illegal search occurred when police officers used a drug-sniffing dog to smell his luggage because they did not have individualized suspicion that he was committing a crime prior to the canine "sniff." The district court denied Roberts' claim that counsel was ineffective for failing to move to suppress the evidence on this ground because it concluded that the drug dog's sniff did not constitute a search. We agree. Roberts' luggage was sniffed in a public place, which does not "constitute a 'search' within the meaning of the Fourth Amendment" because the intrusion is minimal and does not violate a reasonable expectation of privacy. See United States v. Place, 462 U.S. 696, 707 (1983); United States v. Beale, 736 F.2d 1289, 1292 (9th Cir. 1984); cf. Florida v. Jardines, ___ U.S. ___, ___, 133 S. Ct. 1409, 1417 (2013) (distinguishing dogs' sniffs in public places from those within the curtilage of one's home). Because the Fourth Amendment was not implicated, see

---

[2]This is not a claim of a Fourth Amendment violation. Such a claim would be barred by Stone v. Powell, 428 U.S. 465 (1976), because petitioner was given a full and fair opportunity to litigate the claim in state court. A claim that counsel was ineffective because counsel did not litigate the claim is separate from the underlying Fourth Amendment claim, and it can be raised in a federal habeas corpus petition. Kimmelman v. Morrison, 477 U.S. 365, 374 (1986).

Maryland v. Macon, 472 U.S. 463, 468-69 (1985), police officers required no suspicion before allowing the dog to sniff his luggage. We conclude that the district court did not err by denying Roberts' claim . . . .

Ex. 72, at 1-2 (#10). The Nevada Supreme Court accurately summarized the cases cited in the passage quoted above. Petitioner's counsel testified at the evidentiary hearing in state district court. Petitioner had made statements after he was taken into custody, and counsel moved to suppress those statements because the police did not give petitioner the required warnings.[3] Also, as noted above, counsel filed a motion regarding the failure to preserve petitioner's backpack and the bottles in which the police found the drugs. He did not move to suppress the evidence based upon an illegal search. He had researched the issue and learned of the line of cases noting that sniffs by drug-detecting dogs on buses and in trains were not searches within the meaning of the Fourth Amendment. He did not want to file a meritless motion solely for the sake of filing a motion. Ex. 64, at 16-20 (#10). See also Ex. 10 (motion to suppress statements) (#8), Ex. 15 (motion to suppress based upon discarded baby powder bottle) (#8). In other words, counsel did file motions to suppress when he thought that the topics were substantial. Based upon the state of the law and counsel's testimony, the Nevada Supreme Court reasonably determined that petitioner's counsel did not provide ineffective assistance because he did not file a motion to suppress evidence recovered from petitioner's backpack. Ground 1 is without merit.

Reasonable jurists would not find the court's conclusion to be debatable or wrong. The law on the underlying issue simply is not in petitioner's favor. The court will not issue a certificate of appealability on this ground.

Ground 2(1) is a claim that the trial court committed constitutional error when it admitted prior-bad-act evidence of a traffic stop in California where petitioner was found in possession of 25-30 ecstacy pills. On this issue, the Nevada Supreme Court held:

First, Roberts asserts that the district court erred when it admitted evidence of his prior arrest for possession of ecstasy. Before evidence of the arrest was admitted, the district court held a Petrocelli [FN1] hearing, where a police officer testified that he stopped a vehicle in which Roberts was a passenger and found 25-30 ecstasy pills in a bag secured to his underwear. As the instant charges also accused Roberts of possession of ecstasy, the district court admitted

---

[3] Petitioner does not challenge the admissibility of those statements in this petition.

-6-

> the prior act evidence to show appellant's intent and absence of mistake, further concluding that this prior act was relevant, proved by clear and convincing evidence, and not unduly prejudicial. See Tavares v. State, 117 Nev. 725, 731, 30 P.3d 1128, 1131 (2001), holding clarified by Mclellan v. State, 124 Nev. 263, 268, 182 P.3d 106, 110 (2008). Additionally, the district court provided proper limiting instructions contemporaneously with the admission of the prior act and at the close of evidence. See id. at 733, 30 P.3d 1128, 30 P.3d at 1133. As Roberts argued that the backpack—in which the ecstasy and marijuana at issue in this case were found—belonged to someone else, we conclude that the district court did not abuse its discretion in admitting the challenged evidence for the limited purpose of proving absence of mistake or intent. See Braunstein v. State, 118 Nev. 68, 72, 40 P.3d 413, 416 (2002); see also Mayer v. State, 86 Nev. 466, 468, 470 P.2d 420, 422 (1970) (noting that prior possession of narcotics is relevant to show intent to sell narcotics).
>
> [FN1: Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985), modified by Sonner v. State, 112 Nev. 1328, 1333-34, 930 P.2d 707, 711-12 (1996) and superseded in part by statute as stated in Thomas v. State, 120 Nev. 37, 44-45, 83 P.3d 818, 823 (2004).]

Ex. 58, at 1-2 (#10). An error in state evidence law does not violate the Fourteenth Amendment unless the error is so great that it renders the proceedings fundamentally unfair. See Estelle v. McGuire, 502 U.S. 62, 70 (1991). However, McGuire specifically reserved comment on the question whether admission evidence of other illegal acts to prove propensity to commit a crime could violate the constitution. Id. at 70, 74-75. See also Alberni v. McDaniel, 458 F.3d 860, 864 (9th Cir. 2006). The Nevada Supreme Court's decision cannot be contrary to, or an unreasonable application of clearly-established federal law as determined by the Supreme Court of the United States because no such clearly-established federal law exists on this issue. Alberni, 458 F.3d at 867. See also Carey v. Musladin, 549 U.S. 70, 77 (2006). Ground 2(1) is without merit.

Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for ground 2(1).

Ground 2(2) is a claim that the trial court committed constitutional error when it admitted prior-bad-act evidence of petitioner's gang activity. On this issue, the Nevada Supreme Court held:

> Second, Roberts argues that the district court failed to correct a prejudicial error when the State highlighted a reference to gang activity during a police officer's testimony. We conclude that any error was harmless considering the officer's clarification on cross-examination that Roberts' apprehension was not part of a gang-related action and the weight of inculpatory evidence-including Roberts' admission of ownership of the backpack. See King v. State, 116 Nev. 349, 356, 998 P.2d 1172, 1176 (2000).

Ex. 58, at 2 (#10). "Although the [Supreme] Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, . . . it has not yet made a clear

ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (citation omitted). In the absence of such a decision by the Supreme Court of the United States on the matter, the Nevada Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law. Musladin, 549 U.S. at 77. Ground 2(2) is without merit.

Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for ground 2(2).

In ground 2(3), petitioner claims that the trial court erred in refusing to find that the police acted in bad faith in failing to preserve the backpack and powder bottles, thus losing fingerprint and DNA evidence that would have been favorable to petitioner. Petitioner also claims that the trial court erred in refusing petitioner's request for an instruction presuming that the lost evidence would have been favorable to the defense. On this issue, the Nevada Supreme Court held:

> Third, Roberts claims error in the district court's refusal to instruct the jury that he was entitled to an inference that evidence the police did not collect, or disposed of, would have been favorable to him. We discern no error. The ecstasy and marijuana that Roberts was convicted of trafficking were found in two powder containers, which, in turn, were discovered in a backpack. Police left the backpack at the bus depot and disposed of the powder bottles at the police station. Roberts argues that both might have revealed exculpatory fingerprints or DNA evidence. Roberts, however, has failed to demonstrate that the police disposed of the powder bottles in bad faith, see State v. Hall, 105 Nev. 7, 9, 768 P.2d 349, 350 (1989), or that he was prejudiced by their disposal beyond a "hoped-for conclusion from examination of the [missing] evidence," Boggs v. State, 95 Nev. 911, 913, 604 P.2d 107, 108 (1979).

Ex. 58, at 2-3 (#10). "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988). Lever testified at the trial-court hearing on the motion regarding this evidence. Lever felt that the case against petitioner was clear once petitioner said that the backpack was his and the drugs were found. Lever left the backpack and the contents that were not seized as evidence at the bus station because of an informal practice to make such luggage easy to retrieve for defendants who can bail out of jail and continue on their journeys.[4] Ex.

---

[4]The practice was changed due to this case.

-8-

25, at 22-23 (#8). Lever and his partner decided to throw out the powder bottles because the powder all over their exteriors made it unlikely to retrieve any fingerprints, because they possessed the plastic bags in which the drugs were kept inside the bottles,[5] and because the bottles generally were messy. Ex. 25, at 20-21 (#8). In argument on the motion to suppress, petitioner conceded that the police did not act in bad faith, but he argued that the police did act with gross negligence. Ex. 25, at 58-60 (#8). Even without that concession, the state courts reasonably could have concluded that there was no bad faith, based upon the detective's testimony. Ground 2(3) is without merit.

Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the court will not issue a certificate of appealability for ground 2(3).

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#2) is **DENIED**. The clerk of the court shall enter judgment accordingly and close this action.

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

DATED: This 21st day of April, 2016.

_____
ROBERT C. JONES
United States District Judge

---

[5] The criminalist assigned to this case testified at trial that when she had received the request to test the plastic bags for fingerprints, she herself already had handled the plastic bags repeatedly with bare hands. Ex. 38, at 46 (#9). She further testified that her laboratory could recover fingerprints from plastic packaging in only 10% of tests, and recover valuable fingerprints 15% of that 10%, or in 1.5% of all tests. Id. at 46-47 (#9).
Petitioner contested these arguments a trial. His expert witness testified that it was possible to retrieve fingerprints from plastic bottles covered in powder. Id. at 70 (#9). He also testified that not only was it possible to retrieve fingerprints from a plastic bag, he himself had done it many times. Id. at 71-72 (#9).